UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DION LIGON, | Case No. 3:24-cv-00506-MMD-CLB |
| Plaintiff, | SCREENING ORDER (FAC) |
| v. | |
| WILLIAM GITTERE, *et al.*, | |
| Defendants. | |

I.      **SUMMARY**

*Pro se* Plaintiff Dion Ligon, who is incarcerated in the custody of the Nevada Department of Corrections, has submitted a first amended civil rights complaint under 42 U.S.C. § 1983 ("FAC") and an application to proceed *in forma pauperis*. (ECF Nos. 1, 1-1, 3.) The Court now screens the FAC under 28 U.S.C. § 1915A.

II.     **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

1    In addition to the screening requirements under § 1915A, under the Prison

2    Litigation Reform Act, a federal court must dismiss an incarcerated person's claim if "the

3    allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a

4    claim on which relief may be granted, or seeks monetary relief against a defendant who

5    is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure

6    to state a claim upon which relief can be granted is provided for in Federal Rule of Civil

7    Procedure 12(b)(6), and the Court applies the same standard under § 1915 when

8    reviewing the adequacy of a complaint or an amended complaint. When a court dismisses

9    a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint

10   with directions as to curing its deficiencies, unless it is clear from the face of the complaint

11   that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70

12   F.3d 1103, 1106 (9th Cir. 1995).

13   Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See*

14   *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to

15   state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in

16   support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d

17   756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all

18   allegations of material fact stated in the complaint, and the Court construes them in the

19   light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th

20   Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than

21   formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While

22   the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff

23   must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*,

24   550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is

25   insufficient. *See id*.

26   Additionally, a reviewing court should "begin by identifying pleadings [allegations]

27   that, because they are no more than mere conclusions, are not entitled to the assumption

28   of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide

2

1  the framework of a complaint, they must be supported with factual allegations." *Id.* "When
2  there are well-pleaded factual allegations, a court should assume their veracity and then
3  determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining
4  whether a complaint states a plausible claim for relief . . . [is] a context-specific task that
5  requires the reviewing court to draw on its judicial experience and common sense." *Id.*

6  Finally, all or part of a complaint filed by an incarcerated person may be dismissed
7  *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This
8  includes claims based on legal conclusions that are untenable (*e.g.*, claims against
9  defendants who are immune from suit or claims of infringement of a legal interest which
10  clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*,
11  fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989);
12  *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

13  **III.    SCREENING OF FAC**

14  In his FAC, Plaintiff sues multiple Defendants for events that took place while he
15  was incarcerated at Lovelock Correctional Center. (ECF No. 6 at 1.) Plaintiff sues
16  Defendants Warden William Gittere, Officer M. Etcheberry, Lt. Bobby Preston, and
17  Caseworker Rutherford. (*Id.* at 1-2.) Plaintiff brings three claims and seeks monetary,
18  declaratory, and injunctive relief. (*Id.* at 2-7.)

19  Plaintiff alleges the following. On August 13, 2022, Officer Etcheberry searched
20  the cell where Plaintiff resided with other inmates. (*Id.* at 4.) At one point in the search,
21  Plaintiff and the other inmates were not present in the cell. (*Id.*) When prison staff escorted
22  Plaintiff back to the area of the search, Etcheberry accused Plaintiff of possessing "a hard
23  rock or crystal substance," which was hidden in a marker box. (*Id.*) Plaintiff immediately
24  told Etcheberry that the marker box was not his. (*Id.*) Etcheberry insisted that the marker
25  box was Plaintiff's, even though he denied owning it. (*Id.*)

26  Based on the allegations that Plaintiff owned the marker box and the narcotics
27  contained within it, Etcheberry filed a false writeup against him. (*Id.* at 5.) The writeup
28  stated: (1) Plaintiff owned all the property in the four bags collected during the search,

including the marker box; (2) Etcheberry examined the contents of all the bags in Plaintiff's presence; and (3) the rocks in the marker box contained illicit substances. (*Id.* at 4-5.) It appears from the FAC that Plaintiff attended a disciplinary hearing regarding the false notice of charges, where prison officials explained his right to remain silent and told him that he could call witnesses in his defense. (*Id.* at 10-11.) Plaintiff did not call any witnesses. (*Id.*) After the hearing, Lt. Preston found Plaintiff guilty of the charge of possessing narcotics and placed him in disciplinary segregation for sixty days. (*Id.* at 11.) Plaintiff also lost sixty days of stat time. (*Id.*)

Director Gittere and Warden Garrett upheld the disciplinary ruling. (*Id.* at 6.) During his time in the segregated housing unit, Plaintiff could not communicate with his family and friends outside of prison. (*Id.*)

Based on these allegations, Plaintiff raises three claims, which the Court interprets as a Fourteenth Amendment due process claim based on placement in disciplinary segregation.

To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995). In *Sandin*, the Supreme Court held that a prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Supreme Court focused on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected. *Id.* at 486-87.

When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the

4

1  evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an

2  opportunity to present documentary evidence and call witnesses, unless calling witnesses

3  would interfere with institutional security; and (3) legal assistance where the charges are

4  complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

5          "When prison officials limit an inmate's efforts to defend himself, they must have a

6  legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992). An

7  inmate's right to present witnesses may legitimately be limited by "the penological need

8  to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life

9  which may result from violence or intimidation directed at either other inmates or staff."

10  *Ponte v. Real*, 471 U.S. 491, 495 (1985). Prison officials "must make the decision whether

11  to allow witnesses on a case-by-case basis, examining the potential hazards that may

12  result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir.

13  2003). Despite this, an inmate has no right to cross-examine or confront witnesses in

14  prison disciplinary hearings. *See Wolff*, 418 U.S. at 567-68.

15          The Court finds that Plaintiff fails to state a colorable due process claim based on

16  his placement in disciplinary segregation. Plaintiff's allegations are nearly identical to the

17  allegations in the original complaint (ECF No. 5). The Court dismissed that complaint for

18  several reasons. First, the filing of false charges against an inmate is not a due process

19  violation. *See Johnson v. Felker*, 2013 U.S. Dist. LEXIS 170474, 2013 WL 6243280, at

20  *6 (E.D. Cal. 2013) ("Prisoners have no constitutionally guaranteed right to be free from

21  false accusations of misconduct, so the mere falsification of a [rules violation] report does

22  not give rise to a claim under section 1983.") (citing *Sprouse v. Babcock*, 870 F.2d 450,

23  452 (8th Cir. 1989)). Second, the process for convicting Plaintiff in the disciplinary hearing

24  appears to be proper. Plaintiff had notice of the charges against him, and he had the

25  opportunity to call witnesses in his defense. Plaintiff raised these same issues in the FAC.

26  Because the Court gave Plaintiff leave to amend this claim in a previous screening order,

27  and he failed to correct the deficiencies of the original complaint, the Court dismisses this

28  claim, along with the entire FAC, with prejudice, as amendment would be futile. *See Zucco*

1   *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (noting leave to

2   amend not required when plaintiff was previously allowed to amend but failed to correct

3   identified deficiencies).

4          Finally, to the extent Plaintiff raises a due process claim for the loss of his stat time,

5   his claim fails. In Nevada, state prisoners do not have a liberty interest in parole or parole

6   eligibility. *See Moor v. Palmer*, 603 F.3d 658, 661-62 (9th Cir. 2010).

7   **IV.    CONCLUSION**

8          It is therefore ordered that the first amended complaint (ECF No. 6) is the operative

9   complaint.

10         It is further ordered that the first amended complaint (ECF No. 6) is dismissed in

11  its entirety with prejudice, as amendment would be futile.

12         It is further ordered that Plaintiff's application to proceed *in forma pauperis* (ECF

13  Nos. 1, 3) is granted. Plaintiff is not required to pay an initial installment of the filing fee.

14  Even though this case has been dismissed, the full filing fee must still be paid under 28

15  U.S.C. § 1915(b)(2).

16         It is further ordered that, under 28 U.S.C. § 1915, the Nevada Department of

17  Corrections will forward payments from the account of Dion Ligon, 1096407 to the Clerk

18  of the United States District Court, District of Nevada, 20% of the preceding month's

19  deposits (in months that the account exceeds $10.00) until the full $350 filing fee has

20  been paid for this action. The Clerk of Court will send a copy of this order to the Finance

21  Division of the Clerk's Office. The Clerk will send a copy of this order to the attention of

22  Chief of Inmate Services for the Nevada Department of Corrections at

23  formapauperis@doc.nv.gov.

24         It is further ordered that this Court certifies that any *in forma pauperis* appeal taken

25  from this order would not be taken "in good faith" under 28 U.S.C. § 1915(a)(3).

26  ///

27  ///

28  ///

6

The Clerk of Court is further directed to close this case and enter judgment accordingly.

DATED THIS 16th Day of May 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE